UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BILLY ORRICK,

        Petitioner,

v.

TONY TRIERWEILER,

        Respondent.
_____/

Case No. 1:19-cv-56

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. Factual allegations

Petitioner Billy Orrick is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Petitioner pleaded guilty in the Berrien County Circuit Court to three counts of armed robbery. On April 23, 2012, the court sentenced Petitioner to three concurrent prison terms of 20 to 60 years. Petitioner moved to either withdraw his plea or for resentencing. Petitioner was given his choice of remedies, and he elected to be resentenced by a different judge. On October 31, 2013, over Petitioner's objections to the trial court's scoring of certain sentencing variables, the court resentenced Petitioner to a prison term of 18 to 50 years on each count.

Petitioner sought leave to appeal his sentence in the Michigan Court of Appeals. In the brief filed by counsel, Petitioner raised five issues concerning his sentence. Petitioner also filed a pro per supplemental brief raising three issues. A number of the issues raised on appeal were duplicative. In an order issued on June 16, 2014, the court of appeals denied the delayed motion for leave to appeal.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same eight issues. In an order issued on December 30, 2014, the supreme court held Petitioner's application in abeyance, pending the court's resolution of *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). After *Lockridge* was decided, the supreme court issued an order remanding the case to the trial court to determine whether the court would have imposed a materially different sentence under the procedure described in *Lockridge*. The supreme court denied leave to appeal in all other respects.

Petitioner promptly filed a motion for reconsideration of the supreme court's decision. Upon review, the court held the motion for reconsideration in abeyance, pending its

decision in two pending cases in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), and *People v. Masroor*, 910 N.W.2d 272 (Mich. 2018). On November 29, 2017, after the *Steanhouse* case was decided, the supreme court issued its opinion and order denying Petitioner's motion for reconsideration.

In the interim, on May 13, 2016, six months after the supreme court issued its order remanding the case to the trial court to determine whether it would have imposed a different sentence, Petitioner filed a motion in the trial court to stay reconsideration of the sentence until after the supreme court had decided his pending motion for reconsideration. (Berrien Cty. Docket Sheet, ECF No. 1-1, PageID.93.) On July 5, 2016, without addressing Petitioner's motion to stay, the trial court issued an order reaffirming the October 31, 2013, sentence, concluding that it would have imposed the same sentence absent the constitutional error. (*Id.*)

On April 16, 2018, following the supreme court's denial of his motion for reconsideration, Petitioner filed a motion in the trial court seeking a full resentencing hearing and appointment of counsel. The court directed the prosecutor to respond and permitted Petitioner to reply. In an order issued on December 12, 2018, the trial court denied the motion for resentencing. The court held that, in its July 5, 2016, order, it had followed the remand procedures set forth in *United States v. Crosby*, 397 F.3d 103, 117-18 (2d Cir. 2005), as directed by the *Lockridge* court.

On January 16, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on January 16, 2019. (Pet., ECF No. 1, PageID.17.)

The petition raises four grounds for relief, as follows:

I. The trial court deprived Petitioner of his due process, equal protection, and other protected rights under the United States Constitution when it illegally engaged in judicial fact-finding in scoring the guidelines.

II. The trial court deprived Petitioner of his due process, equal protection, and other protected rights under the United States Constitution when it scored 75 points to PRV-1; 10 points to OV-4; and 25 points to OV-13.

III. The trial court deprived Petitioner of his due process, equal protection, and other protected rights under the United States Constitution when it violated the Double Jeopardy Clauses in convicting Petitioner of separate offenses for each alleged person in the store when he allegedly robbed it.

IV. The trial court deprived Petitioner of his due process, equal protection, and other protected rights under the United States Constitution when it failed and/or refused to update the presentence report for the resentencing hearing.

(Pet., ECF No. 1, PageID.13.) The four grounds were raised in the state appellate courts as the first four issues in his applications for leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court.

Petitioner has raised two additional grounds for relief in his motion to stay the petition (ECF No. 2) to permit him to exhaust his remedies in the state courts:

V. Whether on remand from the Michigan Supreme Court the trial court erred in failing to comply with the required procedure for Crosby remands when it failed to appoint and obtain views of defense counsel before deciding to reaffirm [Petitioner's] original sentence and, in doing so, unlawfully deprived defendant of his federal and state constitutional right to counsel and due process. . . .

VI. Whether [Petitioner] is entitled to full resentencing under Lockridge and the constitutional requirement of the "harmless beyond a reasonable doubt" standard of Chapman v. California, 386 U.S. 18 (1967), and without consideration of any plain error standards where [Petitioner's] error under Alleyne was preserved in the trial court.

(Mot. to Stay, ECF No. 2, PageID.98.) Petitioner raised both issues in the trial court in his April 16, 2018, motion seeking a full resentencing hearing.

4

Because Petitioner's new grounds are meritless, the Court will deny the motion to stay and consider the unexhausted claims on the merits.[1] Upon review, the Court concludes that Petitioner's habeas grounds are either noncognizable or meritless.

II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include

---

[1] While this Court may not grant a habeas petition on grounds that are unexhausted, 28 U.S.C § 2254(b)(1)(a), a petition may be denied on the merits, notwithstanding the petitioner's failure to exhaust his state-court remedies, 28 U.S.C. § 2254(b)(2).

decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. <u>Sentence Enhanced by Judicial Factfinding</u>

In his first habeas ground, Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the

7

Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520-21 (relying on *Booker*, 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[]a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, because Petitioner was resentenced on October 31, 2013, some months after the Supreme Court decided *Alleyne*, *Alleyne* was clearly established at the time of the sentence that Petitioner appealed. Application of *Alleyne*, however, does not alter the result in the instant case. Petitioner's appeal was held in abeyance until after the Michigan Supreme Court decided *Lockridge*. The supreme court remanded the case to the trial court to determine whether it would have issued a different sentence if the guidelines were not mandatory. On July 5, 2016, the trial court held that it would have imposed the same sentence absent the constitutional error, and it reaffirmed Petitioner's sentence. As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the

authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi v. New Jersey,* 530 U.S. 466, 481-82 (2000) (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Because the trial court held that it would have imposed the same sentence regardless of the guidelines, Petitioner cannot demonstrate that he was prejudiced by the mandatory nature of the guidelines at the time he was sentenced.

IV. Sentence Scoring Errors

In Ground II of his habeas application, Petitioner argues that the trial court deprived him of his rights under the Due Process Clause and the Equal Protection Clause, when it improperly scored Prior Record Variable (PRV) 1, Mich. Comp. Laws § 777.51, Offense Variable (OV) 4, Mich. Comp. Laws § 777.34, and OV 13, Mich. Comp. Laws § 777.43.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature);

9

*Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentence clearly is neither arbitrary nor shocking. Indeed, his current sentence is lower than the original sentence he received, and it is far lower than the maximum sentence of life imprisonment provided by statute. *See* Mich. Comp. Laws § 750.529. Further, Petitioner does not even argue that the facts found by the court at sentencing were materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the

10

court should have reached different results on each of the variables, based on the information that was before it. Such a claim clearly falls far short of the sort of egregious circumstances implicating due process.

For all these reasons, Petitioner's second ground for habeas relief will be denied as noncognizable or without merit.

V.  Convictions on Multiple Counts Arising Out of a Single Robbery

In his third habeas ground, Petitioner argues that the trial court denied him his rights to equal protection and due process and violated the Double Jeopardy Clause when it convicted him on three counts of armed robbery, based solely on the number of individuals who were in the store when Petitioner robbed it. In his brief on appeal to the Michigan Court of Appeals, Petitioner also suggested that counsel was ineffective in failing to object to his being charged and convicted on three counts of armed robbery, arising out of a single robbery.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are among the claims foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the

> voluntary and intelligent character of the guilty plea by showing that the advice he
> received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

Petitioner does not challenge either the court's jurisdiction or the voluntariness of his plea. Instead, Petitioner complains about the number of crimes with which he was charged. But, that is an antecedent claims that he waived by pleading guilty to all three counts. Moreover, his claim of ineffective assistance of counsel does not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relates to counsel's pre-plea failure to challenge the number of charges Petitioner faced. Petitioner was well aware of counsel's alleged failure at the time he entered his plea. Petitioner's claims have therefore been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

Finally, to the extent that Petitioner argues that the charges were improper under state law, his claim is not cognizable in this action. As earlier discussed, the federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 67-68.

For these reasons, Petitioner is not entitled to relief on his third habeas ground.

VI. <u>Refusal to Update the Presentence Report Before Resentencing</u>

Petitioner next argues that the trial court violated his rights under the Due Process Clause and the Equal Protection Clause when it failed or refused to update the presentence report

prior to resentencing. In addition, he contends that counsel was ineffective in failing to raise the issue.

In support of his claim, Petitioner relies upon Michigan's statutory requirement of a presentence investigation report, *see* Mich. Comp. Laws § 771.14, and Michigan cases interpreting that law, *see People v. Triplett*, 287 N.W.2d 165, 167 (Mich. 1980) (holding that "a reasonably updated presentence report must be utilized in sentencing for felonies"). As repeatedly discussed, however, this Court lacks the authority to grant habeas relief on an error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 67-68.

While Petitioner cites one case from the United States Supreme Court as purported authority supporting his argument, *see Williams v. New York*, 337 U.S. 241 (1948), that case utterly fails to provide support for his argument. In *Williams*, the Supreme Court held that a sentencing judge may consider out-of-court information when setting a sentence without violating due process, even in capital cases. *Id.* at 251-52. The *Williams* Court at no time suggests that presentence reports are necessary for due process, much less that due process required such reports to be reasonably updated.

In addition, although the Supreme Court has held on statutory grounds that a federal district court *may* consider postsentencing rehabilitation when a sentence has been set aside on appeal, *see Pepper v. United States*, 562 U.S. 476, 481 (2011), the Court did not mandate consideration of postsentencing rehabilitation, and it did not require the preparation of a new presentence report. Further, on no occasion has the Supreme Court held that either the Due Process Clause or the Equal Protection Clause requires that an updated presentence report be prepared before any resentencing.

Because no Supreme Court precedent supports Petitioner's claim for relief, Petitioner cannot demonstrate that the state court's rejection of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

### VII. Denial of Counsel and Due Process During Resentencing

In his first unexhausted ground for relief (Ground V), Petitioner argues that the trial court violated his right to counsel and to due process when it failed to appoint an attorney to represent Petitioner on remand before it reaffirmed his sentence. He also argues that the trial court did not comply with the procedure set out in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), *adopted in Lockridge*, 870 N.W. 2d 502, in reaffirming his sentence.

The denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984). The court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

It is well established that sentencing is a critical stage of the proceedings at which a defendant is entitled to the effective assistance of counsel. *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (citing *Mempa v. Rhay*, 389 U.S. 128 (1967); *Specht v. Patterson*, 386 U.S. 605 (1967)). As a result, the Court will assume without deciding that, if Petitioner had been resentenced without having been allowed to exercise his right to counsel, he would have been denied his rights under the Sixth Amendment, without any need to present evidence of prejudice. *Cronic*, 466 U.S. at 659 n.25.

Here, however, Petitioner was not resentenced. Instead, the trial court followed the procedure set forth in *Lockridge*:

> Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. . . . Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the "further sentencing proceedings" generally appropriate for pre-*Booker/Fanfan* sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only *for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence* . . . .
>
> A remand for determination of *whether* to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, . . . an appellate court will normally be unable to assess the significance of any error that might have been made. . . .

*Lockridge*, 870 N.W.2d at 522-23 (quoting *Crosby*, 397 F.3d at 117-18) (emphasis in original)). The *Crosby/Lockridge* limited-remand approach also was followed, at least in part, by the majority of federal circuit courts considering *Booker* errors. *See United States v. Ameline*, 409 F.3d 1073, 1081 (9th Cir. 2006); *United States v. Coles*, 403 F.3d 764, 770 (D.C. Cir. 2005); *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005); *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005); *United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir. 2005); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005). *But see United States v. Pirani*, 406 F.3d 543, 553 (8th Cir. 2005) (holding that, to show that plain error affected substantial rights, a defendant must demonstrate that he would have received a more favorable sentence under an advisory guideline regime); *United States v. Dazey*, 403 F.3d 1147, 1176-797(10th Cir. 2005) (where there is a reasonable probability that the district court would have imposed a different sentence under advisory guidelines, remand for resentencing is required); *United States v. Hughes*, 401 F.3d 540, 547-55 (4th Cir. 2005) (concluding that the appellate court should consider whether plain error has

15

been shown, without regard to whether the sentencing judge would have reached a different result); *United States v. Oliver*, 397 F.3d 369, 378-80 (6th Cir. 2005) (defining plain error as making findings under mandatory guidelines that increase a sentence and therefore requiring resentencing in every such case). The Supreme Court, however, has never adopted the *Crosby/Lockridge* standard in reviewing *Alleyne* or *Booker* errors. As a result, the Petitioner is not entitled to habeas relief for any alleged error in following that standard. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68.

In the instant case, the trial court held that it did not need to resentence Petitioner, because "it would have imposed the same sentence absent the constitutional error." (Order Reaffirming Original Sentence, No. 2011-106332-FC (Berrien Cty. Cir. Ct. Jul. 5, 2016).) In other words, because the court would have imposed the same sentence under the advisory guidelines, the constitutional error was harmless. Because Petitioner was not harmed by the mandatory guidelines, he was not entitled to resentencing. Further, because Petitioner was not resentenced, he was not deprived of his right to counsel during sentencing.

### VIII. Plain Error or Harmless Error

In his second new ground for habeas relief (Ground VI), Petitioner raises two issues. First, Petitioner argues that, under *Lockridge*, he is entitled to a full resentencing proceeding. Second, Petitioner contends that, unlike the defendant in *Lockridge*, he objected to the *Alleyne* error at the time of sentencing. As a result, he asserts, the proper test for determining whether the constitutional error was harmless is the "harmless beyond a reasonable doubt" standard for preserved error set forth in *Chapman v. California*, 386 U.S. 18 (1967), rather than the "plain error" standard applied by the *Lockridge* court to errors that were not preserved. *See Lockridge*, 870 N.W.2d at 521 n.29 (observing that the plain-error standard of Fed. R. Crim. P. 52(b), which has been applied to unpreserved *Apprendi* errors, is identical to the state-law standard

of review for "plain error affecting substantial rights," set forth in *People v. Carines*, 597 N.W.2d 130, (Mich. 1999) (adopting standard set forth in *United States v. Olano*, 507 U.S. 725, 731 (1993) (addressing the meaning of plain error Fed. R. Crim. P. 52(b))).

To the extent that Petitioner argues that the trial court violated the remedial requirements of *Lockridge*, his claim is not cognizable on habeas review. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68. Moreover, no clearly established Supreme Court precedent requires a full resentencing hearing following every sentencing under mandatory guidelines that increase either the minimum or the maximum of the sentence based on factfinding by a judge. Finally, because the trial court squarely held that it would have imposed the same sentence if the guidelines were advisory, the constitutional error was harmless, regardless of whether analyzed as harmless error or plain error.

For all these reasons, Petitioner is not entitled to relief on his sixth habeas ground.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991)

(it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated: February 20, 2019 /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE